# Law Office of John M. Lambros

11 BROADWAY, SUITE 715
NEW YORK, NY 10004
_____

(212) 430-6474
FAX: (212) 208-2933
E-MAIL: John @Lambroslawfirm.com
www.Lambroslawfirm.com


April 27, 2010

BY ECF

Honorable Robert M. Levy
United States District Court
    Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

       Re:    <u>Mulvey v. Sonnenschein Nath & Rosenthal, LLP; 08 Civ. 1120</u>

Dear Judge Levy:

      I am co-counsel for the plaintiff in this matter and write in reply to defendant's April 19, 2010 letter to the Court, which was sent by defendant before the parties met and conferred yesterday.

      Contrary to the Court's direction, defendant's letter does not respond to specific allegations of discovery misconduct and sharp practice.  Instead, it largely focuses on one point: "Plaintiff's counsel never requested an extension."  (April 19 Ltr. p. 2; Docket Entry No. 49).  The two issues, however, are inextricably linked.

<u>SCHEDULING</u>

      On November 27, 2009, the Court ruled: "The discovery deadline is extended to permit the parties to serve follow-up demands relating to information obtained in general, and not solely to information obtained at deposition."  On January 8, 2010, after the defendant had refused to respond to the Plaintiff's Rule 30(b)(6) notice, the Court ruled: "If follow-up discovery is necessary after the 30(b)(6) depositions, the parties may submit a request for a reasonable discovery extension of 4-6 weeks."  The Court also ordered the defendants to provide "deposition dates for all 30(b)(6) witnesses by 1/15/10."  On January 30, 2010, the Plaintiff was again forced to move to compel concerning the Rule 30(b)(6) notice because the defendant still had not identified which witnesses were designated for each topic.  Accordingly, no depositions could be scheduled.  (Docket Entry No 35.)

To the Plaintiff's surprise, defendant had decided to object to the Rule 30(b)(6) categories, yet failed to inform the Court and the Plaintiff during the January 8 hearing. On February 9 and 10, 2010, the Court held lengthy hearings concerning defendant's after-acquired evidence defenses and then heard argument concerning the Plaintiff's Rule 30(b)(6) categories. Rule 30(b)(6) deposition dates were set that could "not be altered without agreement of both parties absent a showing of very good cause." On February 15, 2010, two weeks before the alleged discovery cut-off, defendant finally responded with a letter identifying its witnesses for the Rule 30(b)(6) topics, which it amended on February 25, 2010.

Accordingly, due solely to defendant's inability to follow this Court's previous scheduling orders, not a single Rule 30(b)(6) deposition could even theoretically go forward before February 15, 2010. Moreover, defendant was changing designations four or five days before the alleged discovery cut-off. In fact, during the February 9, 2010 hearing, the Court recognized the Plaintiff's predicament:

> MR. O'NEILL: Your Honor, we've had one deposition so far. This is hardly the end of discovery, although Mr. Finger might want it to be that.
> THE COURT: Right.

February 9, 2010 Hearing Transcript, 56:23-57:1. In light of the foregoing, the Plaintiff was in no position to accept the Court's invitation for a four-to-six week extension of fact discovery. Rule 30(b)(6) depositions remained untaken. Even today, all 30(b)(6) depositions have not been completed. It is patently untenable for defendant to argue that the Plaintiff should have sought the follow-up discovery when defendant did everything possible to delay deposition scheduling, going so far as to schedule depositions after March 1. *See* Exhibit 3 to Lambros April 13, 2010 Letter to the Court.

WRITTEN DISCOVERY MISCONDUCT

Unnecessary delays and sharp practice did not end with the scheduling of depositions; it began there.

As discussed in great detail during the April 13, 2010 hearing, the Plaintiff had long ago propounded Interrogatory No. 4, which sought information, *inter alia*, concerning the ages of defendant's attorney employees, the identity of those who involuntarily left defendant, and the reasons for the departure. An accurate answer to this interrogatory is central to any plaintiff's discovery plan in an age discrimination case, which is why the Plaintiff has repeatedly sought the Court's assistance in this respect.

As this Court is aware, "[w]here an employer has acted with discriminatory intent, direct evidence of that intent will only rarely be available, so

2

that [the record] must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Miller v. National Life Ins. Co.*, 07 Civ. 00364 (PCD), 2009 WL 347567, *3 (D.Conn. Feb. 11, 2009) (citing *Gallo v. Prudential Res. Svcs.*, LP, 22 F.3d 1219, 1224 (2d Cir. 1994)). In *Flanagan v. Travelers Insurance Company,* 111 F.R.D 42, 48 (E.D.N.Y. 1986), the court held that a "plaintiff who must shoulder the burden of proving that the reasons given for his discharge are pretextual should not normally be denied the information necessary to establish that claim." (quoting *Marshall v. Westinghouse Electric Corp.,* 576 F.2d 588 (5th Cir. 1978)). The court continued: "Comparative information is necessary to afford plaintiff a fair opportunity to develop her case and may be relevant to establish the pretextual nature of defendant's conduct.") (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)).

After the Plaintiff learned that the defendant's response to Interrogatory No. 4 was both inaccurate and outdated, the Plaintiff was forced to file a fourth motion to compel. (Docket Entry No. 41.) Initially, Mr. Finger conceded that only a few terminated attorneys were omitted (April 13 Trans. 9:18-23), but otherwise represented to the Court as follows: "That's a correct responsive, complete answer that they have now." (*Id.* at 10:23-24.) Subsequently, the issue arose concerning the status of an attorney who was "counseled-out." Initially, Mr. Finger argued that the information was irrelevant, in effect arguing that Plaintiff's request for comparative information to establish disparate treatment was unimportant in this age discrimination action. (*Id.* at 23-25). Then, Mr. Finger incorrectly asserted that there were only a few lawyers counseled-out, one of whom was in his twenties, making supplementation irrelevant. (*Id.* at 37-40.)[1] Then, the Plaintiff learned that defendant failed to supplement its response. (*Id.* at 40-41.) Finally, Mr. Finger argued that counseling-<u>out</u> could mean simple criticism. (*Id.* at 39:23.) The foregoing resulted in the Court's April 13, 2010 order requiring supplementation.

An accurate response to Interrogatory No. 4 is foundational to plaintiff's discovery in an age discrimination case.[2] Here, the Plaintiff has been

---

[1] This highlights another serious problem with defendant's written discovery responses. Even if there were only four attorneys counseled-out, the fact that only the 26-year-old was re-hired and given a second chance, as opposed to those in their late thirties and forties, is relevant. Defendants cannot self-screen their responses for what they consider relevant. The parties obviously differ on this point.

[2] During the April 13 hearing, Mr. Finger attempted to minimize the impact of the inaccurate interrogatory response when he stated:

> The question in the 30(b)(6) is as follows: The preparation of and source of information for Exhibit 1. So I just want that clear. There was no obligation on Mr. Barr's part to testify in the 30(b)(6) about

3

prejudiced, particularly with respect to the Barr and Bamberger depositions. The Ashinoff deposition cannot be scheduled until a revised response is served. More importantly, it is emblematic of a discovery strategy that has been calculated to elicit every shred of information for an after-acquired evidence defense while stonewalling the Plaintiff's legitimate discovery requests.[3] To some degree,

> the specific substantive information in the response, number one.

April 13, 2010 Hearing Trans. at 19:2-6. If Mr. Finger's construction is accurate, then the witness was unprepared and it should have been a shorter deposition.

> Q. And what, if anything did you do to prepare yourself to testify with respect to the preparation of this document and the source of the information used to prepare the document?
> A. I have reviewed this document and I was advised by my counsel what actions were taken to prepare it which was, based upon information contained in the firm's H.R. department as well as other books and records of the firm.
> Q. Who prepared Exhibit 1?
> A. I don't know who physically prepared it.

Barr depo. 18:19-19:4.
> Q. What documents did they use to obtain this information?
> A. I cannot identify for you the precise information they used.

*Id.* 19:22-25.

In fact, Mr. Barr realized that his role was to ratify and expound on the substance of Exhibit 1. When he did, defendant's omissions were identified. During the April 13 hearing, Mr. Finger alternatively argued that Mr. Barr testified about the substance of Exhibit 1 for 18 pages, obviating the need for supplementation. Mr. Barr's lack of preparation during the 18 pages of questioning, however, did not allow for a complete deposition.

[3] In *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 363, 115 S. Ct. 879, 887 (1995), Justice Kennedy recognized the dangers inherent in defendant's discovery strategy: "The concern that employers might as a routine matter undertake extensive discovery into an employee's background or performance on the job to resist claims under the Act is not an insubstantial one, but we think the authority of the courts to award attorney's fees, mandated under the statute, 29 U.S.C. §§ 216(b), 626(b), and to invoke the appropriate provisions of the Federal Rules of Civil Procedure will deter most abuses." Here, the defendant has consumed many hours before this Court to pursue dubious after-acquired evidence claims, which in any event may be inadmissible after the New York City Council's enactment of the Restoration Act, all-the-while refusing to set rule 30(b)(6) deposition dates and refusing to provide the Plaintiff with the ages of its relevant employees and the circumstances of their departure, among other important information.

Plaintiff's Third Set of Discovery Requests attempt to remediate some of this harm.

DEPOSITION MISCONDUCT

In a footnote, defendant's counsel dismisses the Plaintiff's assertion that it persistently and improperly instructed witnesses not to answer questions in violation of Fed. R. Civ. P. 30. *See, e.g.,* April 19 Ltr. P.2 n.2 ("Defendant's witnesses were instructed very few times not to answer a question, and those questions bear no relation to Plaintiff's late discovery.")  In fact, during only three Rule 30(b)(6) depositions, which combined lasted eight or nine hours, defendant's counsel instructed witnesses not to answer at least ten times.  On three occasions, the Plaintiff's counsel sought the Court's intervention.  Plaintiff's counsel even read the following into the record:

> MR. FINGER:  Okay.  Then I'll have to instruct him not to answer.
> MR. O'NEILL:  I just want to make a statement for the record here, that under rule 30(c)(2) – and I'm quoting now – a person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court or to move for a protective order under rule 30(d)(3).
> Now, Mr. Finger, which of those bases is the basis for your instruction?
> MR. FINGER: When you get me as a witness, then you can ask the questions.

Bamberger Depo. 46:17-47:5.

In addition, defense counsel repeatedly made speaking objections, which are too numerous to list in this letter.  Counsel frequently suggested a failure of memory, instructing the witness to answer "if you know."  On many other occasions, counsel was far less subtle:

> Q.     And how would you be able to answer that question if you didn't know when the written discovery demands were served upon Sonnenschein?
> MS. SCHMIDT: I'm going to object to the question, because he talked about when efforts he made to retrieve e-mails related to this lawsuit from the e-mail archives.
> MR. O'NEILL: Maybe or maybe not, but I can at least get an answer to the question.
> MS. SCHMIDT: If you can answer.
> A.     Can you repeat the question, please?
> B.     Sure.  Wouldn't you need to know when the written discovery demands were served in order to know what efforts were made to retrieve emails from the response to it?

>       MS. SCHMIDT: Objection to the form of the question.  Why
> would he need to know when it was made?
>       MR. O'NEILL: No more speaking objections.  I don't need to call
> the magistrate again.
>       MS. SCHMIDT: All right.  Go ahead.
> A.    I'm not aware of what would or wouldn't make me an
> appropriate candidate for this process.  I am not an attorney so I can't
> answer your question.

Viscito Depo. 75-76.

THE RULE 30(B)(6) DEPONENTS WERE UNPREPARED

It would be impossible to enumerate the many occasions during which the Rule 30(b)(6) witnesses were simply unprepared.  Mr. Barr's lack of preparation has already been briefly discussed.  One more example is beneficial because it highlights defendant's refusal to provide even basic information about its after-acquired evidence defense, about which Plaintiff's Third Set of Discovery Requests inquire.  Mr. Bamberger was designated as the witness most knowledgeable about defendant's Eighth Affirmative Defense, which reads as follows: "Plaintiff's damages and recovery are barred as a result of after-acquired evidence concerning Plaintiff's use of Defendant's e-mail and computer system for illicit and sexually explicit purposes while working for Defendant in violation of, *inter alia*, Defendant's written workplace policies."  What follows is an excerpt from his deposition:

> Q: Well, did you talk to anybody about this subject [compliance with email policy]?
> A: No.
> Q: The firm employs computer technicians to administer its email system, correct?
> A: Yes.
> Q: Did you talk to them to find out whether the firm has instructed them to assist with compliance of the firm's email system?
> A: No.
> Q: Did you talk to anybody who informed you one way or another of the involvement of the computer technicians in the enforcement or compliance of the email policy?
> A: No.
> Q: Does the firm monitor emails sent by lawyers or other employees of the firm to insure compliance with the email policy?
> A: Not to my knowledge.
> Q: Are you qualifying your answer?
> A: No.
> Q: Then the answer is no?
> A: No, I'm saying not – whether there's somebody somewhere that I

6

>don't know about that does some monitoring, I can't say, but the firm
>– as firm, does not.

Bamberger Depo. 42:16 – 43:19.

<u>DEFENDANT MUST ANSWER PLAINTIFF'S THIRD SET OF DISCOVERY REQUESTS</u>

In his letter, Mr. Finger complains that the Third Set of Requests probe issues that are not new to this case. Discovery on many of these issues, however, has been obstructed by defendants. For example, the need for continued inquiry into information omitted from Interrogatory No. 4 only became known to the Plaintiff during Barr's deposition. Inquiries into email policies only became necessary when defendant's 30(b)(6) witnesses knew virtually nothing about them, despite the email policies being one of the enumerated 30(b)(6) topics. A significant number of other issues arose during the depositions that required additional discovery. For example, Mr. Viscito, the Rule 30(b)(6) witness responsible for preserving electronic evidence, testified that he never received a litigation hold letter or any instructions other than to take a snapshot of Mr. Mulvey's electronic communications. During this deposition, Plaintiff learned for the first time that Mr. Viscito did nothing to preserve documents from central figures such as Messrs. Barr and Ashinoff. Because this is no small matter, Plaintiff has asked for information about document preservation and spoliation. *See Golia v. The Leslie Fay Co., Inc.*, 01 Civ. 1111 (GEL), 2003 WL 21878788, *11 (S.D.N.Y. 2003) ("A defendant's failure to abide by its discovery obligation is particularly troubling in a discrimination case. Broad discovery is vital to a plaintiff's ability to prove her claim of discriminatory conduct, as discrimination is usually covert and relatively easy to disguise with pretextual reasons. In order to allow plaintiffs the opportunity to uncover potential discrimination, courts must be especially vigilant to ensure that employers cooperate fully and openly with the discovery process. Thus, an employer that shirks its discovery obligations and allows relevant documents to be destroyed whether through bad faith or mere negligence must be made to do so at its own risk, not only to foster the broad discovery provided for . . . but also to uphold the aims of federal antidiscrimination laws.").

<u>CONCLUSION</u>

During the meet and confer yesterday, I outlined the foregoing for defendant's counsel. I indicated that our next step would be a motion to compel, seeking to recall at least Messrs. Bamberger and Barr (who collectively testified only several hours) and answers to Plaintiff's Third Set of Discovery Requests (without objection), request an extension of fact discovery for a period of six weeks after the conclusion of the last 30(b)(6) deposition, and for sanctions for the aforementioned discovery abuses. In an effort to arrive at a fair and extrajudicial resolution of these disputes, I offered the following compromise: 1) defendant joins plaintiff in an application to the Court for a six-week extension of fact discovery after the conclusion of the last 30(b)(6) deposition; 2) defendant produces Barr and someone

knowledgeable about Bamberger's topics for additional questioning, not to exceed 2.5 hours for each deponent; 3) defendant answers Plaintiff's Third Set of Requests (retaining the right to make all good faith objections); and 4) Plaintiff foregoes any motions to compel or sanctions related to this letter.

  Notwithstanding all of the allegations of wrongdoing in Plaintiff's and defendant's letters, gamesmanship, and zeal, defendant should accept the offer. It furthers the just resolution of this dispute—a goal that both sides should share.

  Respectfully submitted,

**LAW OFFICE OF JOHN M. LAMBROS**

  */s/ John M. Lambros*


John M. Lambros